UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DIANNA C.,                                                    *
   for JASON C., Deceased,
                                              *

   Plaintiff,
                                              *

v.                                                              Civil Action No. EA-25-2853

                                                     *

FRANK BISIGNANO,
   Commissioner of Social Security,            *

   Defendant.                                       *

**MEMORANDUM OPINION**

On August 29, 2025, Plaintiff Dianna C. petitioned this Court to review the final decision of the Social Security Administration (SSA or Commissioner) denying Claimant Jason C.'s claim for benefits. ECF No. 1. This case was referred to a United States Magistrate Judge with the parties' consent.[1] ECF Nos. 3, 5; Local Rule 301.4 (D. Md. Dec. 1, 2025). Pending before the Court is Plaintiff's appeal, which is fully briefed. ECF Nos. 11, 15–16. No hearing is necessary. Local Rule 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Charter*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, and for the reasons set forth below, the Commissioner's decision is remanded for further consideration.

I.     **BACKGROUND**

    A.     **Procedural History**

On September 20, 2021, Claimant filed applications for Disability Insurance Benefits and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act (the

---

[1] This case was reassigned to the undersigned on May 6, 2026.

Act), 42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.*  ECF Nos. 7-4 at 2–3; 7-6 at 2–3, 10.[2]

Claimant alleged a disability onset date of June 1, 2020.  ECF Nos. 7-4 at 2–3; 7-6 at 3, 10.

Claimant asserted that he was disabled within the meaning of the Act because of, as relevant

here, his limited ability to sit for prolonged periods of time.  ECF Nos. 7-7 at 25; 11 at 11.  The

SSA initially denied Claimant's application for benefits on March 1, 2022.  ECF No. 7-5 at 3, 8.

Claimant sought reconsideration, and the SSA affirmed its initial determination on August 23,

2023.  *Id.* at 17, 24, 28.  Claimant requested a hearing before an Administrative Law Judge

(ALJ), which was held on May 29, 2024.  ECF Nos. 7-3 at 18–28, 34–64; 7-5 at 31, 33.  During

the pendency of his request for a hearing, Claimant passed away and Plaintiff filed a notice of

substitution of a party as the administrator or executor of Claimant's estate.  ECF No. 7-5 at 79–

80.  The ALJ rendered a decision on August 9, 2024, in which he found that Claimant was not

disabled within the meaning of the Act.  ECF No. 7-3 at 18–28.  Plaintiff requested review of the

ALJ's decision, which the Appeals Council denied on July 11, 2025.  ECF Nos. 7-3 at 2; 7-5

at 108–109.  The ALJ's August 9, 2024 decision therefore constitutes the final, reviewable

decision of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20

C.F.R. § 422.210(a).

### B.    Statutory Framework

The Act authorizes Disability Insurance Benefit payments to every insured individual

who "is under a disability."  *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999)

(quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL 2827936,

at *3 (4th Cir. June 4, 2024).  The Act also authorizes Supplemental Security Income payments

---

[2]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

to "persons who have a 'disability.'"[3]  *Barnhart* v. *Thomas*, 540 U.S. 20, 21 (2003).  Both of these programs define "disability" as being "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920.  Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy."  *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "The applicant bears the burden of production and proof during the first four steps of the inquiry."  *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At step five, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience."  *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies step three, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5."  *Patterson* v. *Commissioner of*

---

[3]  The primary difference between these two disability benefit programs is the applicant's employment history and financial resources.  *Delk* v. *Colvin*, 675 Fed. Appx. 281, 282 (4th Cir. 2017) (explaining that the Disability Insurance Benefits program provides benefits to individuals "who have contributed to the program while employed," whereas Supplemental Security Income provides benefits based on financial need); *see also* 42 U.S.C. §§ 423(a)(1), 1381a, 1382.

*Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017).  If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity.  20 C.F.R. §§ 404.1520(e); 416.920(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016).  Residual functional capacity is defined as "the most [the claimant] can still do despite [their physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945.  The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of the disability assessment.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Monroe*, 826 F.3d at 180.

### C.      ALJ's Decision

The ALJ initially determined that Claimant met the insured status requirements of the Act through December 31, 2025.  ECF No. 7-3 at 20.  At step one of the five-step sequential disability evaluation, the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged disability onset date.  *Id*.  At step two, the ALJ found that Claimant suffered from the severe impairments of lumbar degenerative disc disease, chronic obstructive pulmonary disease, sacroiliac disorder, post-laminectomy syndrome, and peripheral neuropathy and the non-severe impairments of hypertension, obesity, acoustic neuroma, vitamin D deficiency, and anxiety disorder.  *Id*. at 21.  At step three, the ALJ determined that Claimant "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."[4]  *Id*. at 22 (bold removed).

---

[4]  Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments.  Within Appendix 1, "Adult Listings 12.00 *et seq*. . . . pertain to mental impairments, and consist of (1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,' which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020).  The listing of impairments found in Appendix 1 is incorporated into the evaluation criteria for Supplemental Security Income benefits.  20 C.F.R. § 416.925.

Before continuing to the fourth step of the sequential evaluation, the ALJ determined that Claimant retained the residual functional capacity to "perform sedentary work . . . except no climbing, occasional stooping, kneeling, crouching, crawling, and balancing; no exposure to hazards such as unprotected heights or dangerous machinery; and no exposure to atmospheric conditions." *Id*. at 23 (bold removed). At step four, the ALJ determined that Claimant was unable to perform any past relevant work. *Id.* at 26. At step five, the ALJ found that "there were jobs that existed in the national economy in significant numbers that the claimant could have performed." *Id.* at 27 (bold removed). Ultimately, the ALJ concluded that Claimant had not been under a disability as defined by the Act, and the SSA properly denied his claim for benefits. *Id*. at 27–28.

## II.   DISCUSSION

On appeal, Plaintiff argues that the denial of Claimant's disability benefits is unsupported by substantial evidence because the ALJ's residual function capacity assessment did not contain a function-by-function analysis and failed to explain how the Claimant could perform the necessary functions of sedentary work, specifically, sitting. ECF No. 11 at 11–14. The Commissioner argues the opposite. ECF No. 15 at 6–13.

### A.   Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)). The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence." *Id*. Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the

Secretary if [the] decision is supported by substantial evidence.").  The phrase "substantial evidence" is a "term of art" that "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.").  It is "more than a mere scintilla . . . [and] somewhat less than a preponderance."  *Laws*, 368 F.2d at 642.  The "threshold for such evidentiary sufficiency is not high."  *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997).  Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required.  *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015); *Mascio*, 780 F.3d at 636-637.  Rather, an administrative decision's reasoning need only be "reasonably discernible."  *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021).  "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record."  *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

### B.      Residual Functional Capacity

A claimant's residual functional capacity is determined using a two-step process.  The ALJ must first "identify the individual's functional limitations . . . and assess [their] work-related abilities on a function-by-function basis."  Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-9p), 61 Fed. Reg. 34,474-01, 34,475 (July 2, 1996).  "The function-by-function approach asks the ALJ to consider a

claimant's specific 'exertional and nonexertional functions.'"[5] *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. 2018) (quoting SSR 96-8p, 61 Fed. Reg. at 34,476). The ALJ then expresses a claimant's residual functional capacity "in terms of the exertional levels of work," such as "sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R. § 404.1567. While the SSA guidelines require a "function-by-function" analysis to determine a claimant's residual functional capacity, the United States Court of Appeals for the Fourth Circuit has held that this analysis does not need to be explicit. *Mascio*, 780 F.3d at 636 (rejecting "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis"). Instead, the key consideration is whether the ALJ identified the evidence relied upon in determining the claimant's residual functional capacity and built "an accurate and logical bridge from the evidence to that conclusion." *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted). A proper residual functional capacity analysis "has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The second component of this analysis, "the ALJ's logical explanation, is just as important as the other two." *Id.*; *see also* SSR 96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."). Remand is appropriate when the ALJ's residual functional capacity analysis "contains too little logical explanation for . . . meaningful appellate review." *Thomas*, 916 F.3d at 312).

---

[5] "Exertional capacity . . . defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996). "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking, understanding and remembering instructions, and tolerance of temperature extremes. *Id.*

Here, after conducting the residual functional capacity assessment, the ALJ determined that Claimant could perform sedentary work, which involves, among other things, sitting. ECF No. 7-3 at 23; 20 C.F.R. § 404.1567(a).[6] In reaching this conclusion, the ALJ assessed Plaintiff's testimony regarding Claimant's symptoms, as well as objective medical evidence, medical opinions, and prior administrative findings. ECF No. 7-3 at 24–26. Although the ALJ summarized relevant record evidence, he did not explain how that evidence supported his conclusion that Claimant could perform all the necessary functions of sedentary work, including, as relevant here, sitting. Specifically, the ALJ did not: (1) explain how Plaintiff's testimony was inconsistent with other evidence; (2) provide an assessment of the Claimant's exertional capacity in relation to each work function, particularly his capacity for sitting; or (3) provide a narrative discussion of Claimant's abilities to perform the aforementioned functions for a full workday. The ALJ's residual functional capacity determination therefore precludes meaningful judicial review.

In *Willis F.* v. *Kijakazi*, this Court found that the ALJ's opinion did not provide a bridge between the evidence and the ALJ's conclusion because the ALJ did not explain how the objective medical evidence "either undermine[d] or [was] entitled to more weight than Plaintiff's continued reports of pain." Civil Action No. AAQ-23-318, 2023 WL 8437229, at *2-3 (D. Md. Dec. 5, 2023); *accord Candace W.* v. *Dudek*, Civil Action No. ADC-24-2124, 2025 WL 885998, at *4 (D. Md. Mar. 21, 2025); *Kevin T.* v. *O'Malley*, Civil Action No. CDA-23-312, 2023 WL 8993664, at *4 (D. Md. Dec. 28, 2023); *Towanna G.* v. *Kijakazi*, Civil Action No. BAH-21-1711, 2022 WL 4017417, at *4 (D. Md. Sept. 2, 2022).

---

[6] 20 C.F.R. § 404.1567(a) defines sedentary work as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

Similarly, here, the ALJ did not "build an accurate and logical bridge" between the evidence and his conclusion. *Stoker* v. *Saul*, 833 Fed. Appx. 383, 386 (4th Cir. 2020) (quoting *Brown* v. *Commissioner Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017)). Plaintiff, Claimant's fiancé and partner of 20 years, offered testimony at the hearing as to Claimant's symptoms and her observations of Claimant. ECF No. 7-3 at 43. Plaintiff testified that Claimant suffered from constant pain from standing, walking, and sitting. *Id.* at 45–46, 48–49, 53. She further testified that Claimant was, among other things, unable to "sit for longer than about 10 minutes" and could not sit on a normal chair with pillows for more than three minutes without being in pain. *Id*. at 24.[7] The ALJ determined that Plaintiff's subjective testimony was "not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 25. The ALJ did not, however, explain how her testimony was inconsistent with other record evidence, nor did he specifically cite to conflicting evidence. *Id.* at 24–25. Further, the ALJ did not discuss which aspects of the Plaintiff's testimony were credited or discredited. *Id.* In cases where the claimant alleges subjective symptoms, the ALJ's analysis must "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 61 Fed. Reg. at 34,478; *see also Kanjuette C.* v. *Bisignano*, 819 F. Supp. 3d 403, 417 (D. Md. Feb. 6, 2026) (reversing and remanding because where the ALJ did not explain how medical evidence "undermined Plaintiff's specific allegations of pain, fatigue, and functional limitation" and why those allegations "were entitled to less weight than other evidence in the record"); *Towanna G.*, 2022 WL 4017417, at *4 (reversing and remanding where the ALJ "failed to effectively explain

---

[7] Plaintiff explained that Claimant spent most of the day in a recliner lined with pillows for comfort. Although Claimant attempted to sit in a normal chair lined with pillows two to three times per week, he could tolerate that position for only about three minutes before having to return to his recliner. ECF No. 7-3 at 23.

*how* the objective medical evidence contradicts Plaintiff's subjective complaints") (emphasis in original).

The ALJ also did not explain how the specific limitations in Claimant's residual functional capacity are supported by the record.  ECF No. 7-3 at 24–26.  An ALJ's residual functional capacity analysis "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 61 Fed. Reg. at 34,478; *see also Mascio*, 780 F.3d at 636.  "Without a proper narrative discussion, 'it is impossible for the Court to determine whether the decision was based on substantial evidence.'"  *Nicole C.* v. *Kijakazi*, Civil Action No. JMC-22-21123, 2023 WL 4027481, at *3 (D. Md. June 15, 2023) (quoting *Stacy C.* v. *Kijakazi*, Civil Action No. CBD-20-2833, 2022 WL 814292, at *3 (D. Md. Mar. 17, 2022)).  What is more, the ALJ failed to conduct the necessary function-by-function analysis of the most relevant and contested function: sitting.  This same error formed the basis of reversal in *Dowling* v. *Commissioner of Social Security*, where the Fourth Circuit reversed and remanded after finding that, among other things, the ALJ merely "rattl[ed] off a laundry list" of the plaintiff's impairments and functional restrictions without assessing the plaintiff's ability to sit for a prolonged period of time, which was "critically relevant to determining [plaintiff's] disability status."  986 F.3d 377, 388-389 (4th Cir. 2021); *see also Nicole C.*, 2023 WL 4027481, at *5 (reversing and remanding because "the ALJ prematurely concluded that Plaintiff could perform sedentary work without narratively discussing the extent that Plaintiff can sit").

Lastly, the ALJ failed to analyze Claimant's ability to do "sustained work activity in an ordinary work setting on a regular and continuing basis," as required by the SSR 96-8p.  61 Fed. Reg. at 34,478.  In *Mascio*, the United States Court of Appeals for the Fourth Circuit remanded an ALJ's decision when he ultimately concluded that the plaintiff could perform certain

functions, but the ALJ "said nothing about [the plaintiff's] ability to perform them for a full workday." 780 F.3d at 636-637.  The ALJ made the same error here by failing to evaluate Claimant's ability to perform certain functions, particularly sitting, for a full workday.  Without reaching any specific conclusions about Claimant's capacity to sit for a full workday, as required by SSR 96-8p, the ALJ did not satisfy the requisite function-by-function analysis.  *Carmen F.* v. *Bisignano*, Civil Action No. AAQ-25-1, 2026 WL 772056, at *5 (D. Md. Mar. 19, 2026); *Cleta S.* v. *Bisignano*, Civil Action No. TJS-25-434, 2026 WL 496451, at *3 (D. Md. Feb. 23, 2026).

The Commissioner argues that the ALJ's decision was supported by substantial evidence because his analysis reflects an "accurate summary of the record and indicates that he considered the record as a whole." ECF No. 15 at 8.  A mere summary of the record, even if fully considered, is insufficient without "an accurate and logical bridge from the evidence to that conclusion." *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted).  Here, the ALJ summarized evidence but nevertheless failed to assess Claimant's ability to sit for the duration of the workday, with occasional standing and walking, as required for sedentary work. 20 C.F.R. § 404.1567(a).  Thus, there is insufficient information for meaningful appellate review, and remand is therefore appropriate.

## III.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion pursuant to sentence four of 42 U.S.C. § 405(g).  In remanding for further explanation and analysis, the Court offers no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.  A separate Order follows.

Date:  July 2, 2026

_____/s/_____
Erin Aslan
United States Magistrate Judge

11